UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CV-22914-RAR

**EDMUND GRIGORIAN**,

    Petitioner,

v.

**PAMELA JO BONDI**,
*U.S. Attorney General, et al.*,

    Respondents.
_____/

## ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER

**THIS CAUSE** comes before the Court upon Petitioner's Emergency Motion for Immediate Temporary Restraining Order ("Motion"), [ECF No. 1], filed on June 27, 2025. The Motion seeks a Temporary Restraining Order ("TRO") preventing Respondents from removing or transferring Petitioner Edmund Grigorian outside the Court's jurisdiction pending the disposition of Petitioner's Petition for Writ of Habeas Corpus ("Petition"), [ECF No. 1], pursuant to 28 U.S.C. § 2241. Respondents filed a Response, [ECF No. 7], and Petitioner filed a Reply, [ECF No. 8].

The Court held a hearing on the Motion on July 3, 2025 ("Hearing"), [ECF No. 10]. At the Hearing, both Petitioner's counsel and Respondents' counsel expressed openness to exploring whether Petitioner might be released from detention—including under some form of supervision, such as electronic or GPS monitoring—pending further immigration proceedings, which the parties agreed would potentially render this case moot. Accordingly, the Court entered an Order on July 3, 2025, [ECF No. 9], requiring Respondents to file a Status Report no later than 5:00 PM on July 7, 2025, indicating the feasibility of such measures prior to the Court issuing a ruling on

the Motion, and permitting Petitioner to file a notice indicating the need for further proceedings no later than twenty-four hours after Respondents' Status Report.

On July 7, 2025, Respondents filed a Status Report indicating that Respondents are "not considering Petitioner for release from detention, including under any form of supervision." [ECF No. 11]. On July 8, 2025, Petitioner filed a Notice in response to Respondents' Status Report advising the Court that "further proceedings remain necessary" and "reasserting the need for immediate emergency relief in the form of a [TRO]." [ECF No. 12] at 1.

For the reasons set forth below, Petitioner fails to satisfy the requirements for the issuance of a TRO. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Petitioner's Emergency Motion for Immediate Temporary Restraining Order, [ECF No. 1], is **DENIED** as follows.

## BACKGROUND

Petitioner Edmund Grigorian is an Iranian national and a resident of the United States. Pet., [ECF No. 1] ¶ 1. He fled to the United States in 1979 with his family following the Iranian Revolution due to "fear of future persecution based on religion, nationality, political opinion, and membership in a particular social group." *Id.* ¶ 18. Grigorian and his family are Armenian Christians, and Grigorian's father was "an avid supporter of the Shah of Iran" and a member of the Rastakhiz, a monarchist group that opposes Iran's current political leadership. *Id.* ¶¶ 2, 18–19. As a result, Grigorian and his family suffered persecution in Iran. *Id.* ¶¶ 18–19.

Grigorian and his family were granted asylum in the United States on May 5, 1982. *Id.* ¶ 19. Based on his previously granted asylum, Grigorian became a Lawful Permanent Resident on September 13, 2002. *Id.* ¶ 20. In 2007, Grigorian was convicted on six counts of mail and wire fraud. *See* Judgment, *United States v. Grigorian*, Case No. 05-60203-CR (Jan. 8, 2007), ECF No. 325; *see also* Pet. ¶ 21. As a result, Grigorian was placed into removal proceedings pursuant to

§ 237(a)(2)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A). *See* Pet. ¶ 21; Pet. Ex. B, [ECF No. 1-1]. Grigorian filed an application for withholding of removal under Article 3 of the Convention Against Torture ("CAT"), alleging that he would be subject to torture if he were deported to Iran. *Id.*

On July 18, 2011, an immigration judge issued an order finding that Grigorian is removable and ordering Grigorian removed from the United States to Iran ("Order of Removal"). *See* Pet. Ex. B, [ECF No. 1-1] at 30. Although the immigration judge denied Grigorian's application for withholding of removal, the immigration judge deferred removal to Iran under Article 3 of the CAT, finding that Grigorian would more likely than not be tortured if deported to Iran because he is Armenian, Christian, Americanized, and the son of a member of an Iranian opposition group. *See* Pet. ¶ 23, Pet. Ex. B, [ECF No. 1-1] at 29, 30. The Order of Removal did not identify any third country other than Iran to which Grigorian could be removed. Pet. ¶ 2. On a cover sheet to the Order of Removal, the immigration judge also "crossed out 'or in the alternative to' when indicating the country of removal is Iran and did not list any alternative third countries." Pet. ¶ 23; Pet. Ex. B, [ECF No. 1-1] at 7.

Grigorian appealed the Order of Removal to the Bureau of Immigration Appeals ("BIA"), which dismissed the appeal on October 21, 2011, finding that Petitioner is statutorily ineligible for a waiver of inadmissibility, but leaving in place the deferral of removal. *See* Resp. Ex. A, [ECF No. 7-1]. The BIA decision rendered Grigorian's Order of Removal final. *See* 8 CFR § 1241.1(a) ("An order of removal made by the immigration judge shall become final . . . [u]pon dismissal of an appeal by the Board of Immigration Appeals[.]").

After the Order of Removal, United States Immigration and Customs Enforcement ("ICE") placed Grigorian on an Order of Supervision, allowing him to remain free of ICE detention provided that he comply with the requirements of the Order of Supervision, including by attending

regularly scheduled appointments with ICE. *Id.* ¶ 24. There is no indication in the record that Grigorian at any time failed to comply with his Order of Supervision.

ICE detained Grigorian on June 23, 2025, when he appeared at an ICE facility for one of his regularly scheduled appointments. *Id.* ¶¶ 25, 29. ICE issued Petitioner a Notice of Revocation of Release ("Notice") informing Grigorian that he was to "be kept in the custody of [ICE] . . . based on a review of [his] file and/or [his] personal interview," referencing the "[m]ost recent BIA decision in [his] case." *See* Resp. Ex. B, [ECF No. 7-2]. The Notice further informed Grigorian that he would "promptly be afforded an informal interview at which [he] will be given an opportunity to respond to the reasons for the revocation" and, if he is not released following the informal interview, that he would "receive notification of a new review, which will occur within approximately three months of the date of this notice." *Id.* Grigorian is currently detained at the Krome North Service Processing Center in Miami-Dade County, Florida. Pet. ¶ 11.

Grigorian filed this action on June 27, 2025, seeking (1) immediate release from detention; (2) a TRO preventing Respondents from removing or transferring him outside the Court's jurisdiction; and (3) an order requiring the Government "to provide [Petitioner] with notice and a hearing where he can confront and oppose removal to any alternative third country that agrees to accept him, if one is identified." Pet. at 14–15.

## **LEGAL STANDARD**

To obtain a TRO or preliminary injunction, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (per curiam) (citations omitted). A TRO, like a preliminary injunction, is an "extraordinary and drastic remedy not to be granted

unless the movant clearly establishe[s] the burden of persuasion as to each of the four prerequisites." *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003) (citation modified) (citing *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)).

## ANALYSIS

Grigorian argues that he is entitled to relief for at least three reasons. *First*, Grigorian contends that the circumstances of his detention violate both ICE's own regulations and the Due Process Clause of the Fifth Amendment. *See* Pet. ¶¶ 31–34. *Second*, because the Removal Order does not allow Grigorian to be deported to Iran and does not specify a third country to which he can be deported, any steps taken to execute his Removal Order will violate his due process rights unless he is provided notice and the opportunity to be heard to contest his removal to a third country. *Id.* ¶ 37. *Third*, Grigorian argues that he must be released from detention under the Supreme Court's decision in *Zadvydas v. Davis*, which allows aliens held in post-removal-period detention for longer than 180 days to challenge their detention in a § 2241 habeas proceeding where there is no significant likelihood of removal in the reasonably foreseeable future. *See* 533 U.S. 678, 700–01 (2001).

### I. Subject Matter Jurisdiction

Before addressing the Motion, the Court must consider its own jurisdiction. *See Belleri v. United States,* 712 F.3d 543, 547 (11th Cir. 2013) ("[I]n the federal tandem, jurisdiction takes precedence over the merits. Unless and until jurisdiction is found, both appellate and trial courts should eschew substantive adjudication." (citation modified)). Federal courts are "courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "The burden for establishing federal subject matter jurisdiction rests with the party bringing the claim." *Sweet Pea Marine, Ltd.*

*v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005). "Once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999).

Grigorian brings this case under 28 U.S.C. § 2241, the primary federal habeas statute, which authorizes federal courts to hear "statutory and constitutional challenges to post-removal-period detention." *Zadvydas*, 533 U.S. at 688. Respondents, however, contend that 8 U.S.C. § 1252(g) precludes review of Petitioner's claims. *See* Resp. at 5–6. Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). As the Supreme Court has explained, § 1252(g) is a "discretion-protecting provision" designed to prevent the "deconstruction, fragmentation, and hence prolongation of removal proceedings." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999) ("*AAADC*").

The Supreme Court has given § 1252(g) a "narrow reading," emphasizing that it does not cover "all claims arising from deportation proceedings" or impose "a general jurisdictional limitation." *AAADC*, 525 U.S. at 482, 487; *see also Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020). Rather, as "the Supreme Court has explained, § 1252(g) lists just three 'discrete actions': actions to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1272 (11th Cir. 2021) (quoting *AAADC*, 525 U.S. at 482). "[A]lthough 'many other decisions or actions' may be 'part of the deportation process,' only claims that *arise from one of the covered actions* are excluded from [a court's] review (at least by this provision)." *Id.* (quoting *AAADC*, 525 U.S. at 482) (emphasis added).

The Supreme Court has likewise interpreted § 1252(g)'s "arise from" language narrowly, cautioning that § 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the three listed actions"; instead, the statute "refer[s] to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018). In other words, to determine whether a claim "arise[s] from" one of the covered actions, "courts must focus on the action being challenged," *Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1258 (11th Cir. 2020), namely, whether one of the three actions listed in § 1252(g) forms the "basis of the claim," *Gupta v. McGahey*, 709 F.3d 1062, 1065 (11th Cir. 2013) *suggestion for reh'g en banc denied*, 737 F.3d 694 (2013), *cert. denied*, 34 S.Ct. 2840 (2014).

Consequently, an alien who seeks a stay of a removal order or challenges the Attorney General's deportation authority "runs headlong into § 1252(g)" regardless of how the alien frames their claim because, at bottom, the action being challenged is the decision to "execute" a removal order. *Camarena*, 988 F.3d at 1273. Likewise, § 1252(g) bars judicial review of the methods used by immigration authorities to "secure" an alien while awaiting an initial removal hearing because the decision to "commence proceedings" is the foundation of such a claim. *Alvarez v. U.S. Immigr. & Customs Enf't*, 818 F.3d 1194, 1203 (11th Cir. 2016); *see also Gupta*, 709 F.3d at 1065.

The Eleventh Circuit has nevertheless distinguished between situations where an alien's claims are founded directly on a decision or action to commence proceedings, adjudicate cases, or execute removal orders, from those where an alien challenges the "underlying legal bases" of those decisions or actions. *Madu v. U.S. Atty. Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006) (citations omitted); *accord Kong v. United States*, 62 F.4th 608, 617 (1st Cir. 2023) (finding that § 1252(g) does not bar "judicial consideration of collateral challenges to the legality of a petitioner's detention"); *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (en banc) (finding that § 1252(g) does not bar consideration of "a purely legal question that does not challenge the

Attorney General's discretionary authority, even if the answer to that legal question—a description of the relevant law—forms the backdrop against which the Attorney General later will exercise discretionary authority"); *Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999) (finding that § 1252(g) did not bar review of a claim related to detention where the petitioner "did not ask the district court to block a decision 'to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter'").

Here, it appears that Grigorian does not challenge the decision to execute his removal, the decision to detain him, the methods by which he was detained, or the Government's authority to deport or detain him. Rather the "basis of the claim" is that ICE did not "comply with the statutory requirements required to revoke an Order of Supervision outlined in 8 C.F.R. § 241.4(l)(2)." Pet. ¶ 5. And Grigorian maintains that he "is not challenging the validity of the final order of removal, but rather the legality of detention." *Id.* at 5. Accordingly, the Petition does not appear to challenge any *decision* or *action* to detain Grigorian in furtherance of the execution of his Removal Order—instead, it constitutes a challenge to the "underlying legal bases" of those decisions or actions.[1] *Madu*, 470 F.3d at 1368 (citations omitted). Reading § 1252(g) as foreclosing judicial review of such claims risks running afoul of the Supreme Court's admonition that § 1252(g) is not "a general jurisdictional limitation" on "all claims arising from deportation proceedings." *AAADC*, 525 U.S. at 482, 487.[2]

---

[1] At the Hearing, [ECF No. 10], Respondents' counsel proposed exploring whether Grigorian might be released from detention—including under some form of supervision, such as electronic or GPS monitoring—pending further immigration proceedings. Grigorian's counsel agreed that the Petition might be moot if Grigorian were released from detention, even while immigration proceedings to determine whether he can be deported to a third country continue. *Id.* These representations further bolster the Court's conclusion that the action Grigorian challenges is not the decision to execute his removal, but rather the underlying legal bases for detention.

[2] The Court is unaware of—and Respondents do not provide—any in-circuit authority suggesting that § 1252(g) forecloses review of challenges to the underlying legality of detention.

In sum, the Court does not believe that § 1252(g) clearly bars review of this case to the extent Grigorian seeks only "substantive review of the underlying legal bases" of his detention. *Madu*, 470 F.3d at 1368 (citations omitted).  At this stage, on this record, and on this emergency posture, the Court is—for now—satisfied that § 1252(g) does not divest it of jurisdiction over the entirety of the Petition.  However, if subsequent developments reveal that Grigorian is in fact seeking to use the Petition as a collateral challenge to the execution of his Removal Order, the Court would be compelled to find that § 1252(g) divests it of jurisdiction.

## II. Substantial Likelihood of Success on the Merits

"[I]njunctive relief may not be granted unless the plaintiff establishes the substantial likelihood of success criterion." *Schiavo*, 403 F.3d at 1226.  "A substantial likelihood of success on the merits requires a showing of only likely or probable, rather than certain, success." *Id.* at 1232 (citations omitted).  Because Grigorian fails to establish a substantial likelihood of success on the merits, he has not established his entitlement to a TRO.

### A. Petitioner Does Not Establish That His Detention Violated ICE Regulations

Grigorian argues that under 8 C.F.R. § 241.4(l), "ICE may revoke an Order of Supervision only if the individual violates conditions of release or if the conditions supporting release no longer exist," *id.* ¶ 31, and that ICE must also "document the basis for revocation and provide procedural safeguards," *id.* ¶ 32, "notif[ying the alien] of the reasons for revocation of his or her release or parole" and "afford[ing] an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond [to] the reasons for revocation stated in the revocation," *id.* (quoting 8 C.F.R. § 241.4(l)(1)).  Because Grigorian "never violated the terms of his supervision, and the conditions supporting Mr. Grigorian's release on supervision have not changed," and "[t]here was no notice of alleged violations [of the Order of Supervision], no

opportunity to rebut the government's reasoning, and no indication that any viable removal country had been identified," Grigorian argues that "[t]he revocation of his Order of Supervision and/or his subsequent detention without formal revocation of his Order of Supervision was therefore unreasonable, arbitrary, and unconstitutional." *Id.* ¶ 34.

This is incorrect on both the facts and the law. Grigorian *was* provided with Notice. Resp. Ex. B., [ECF No. 7-2]. The Notice indicated the basis for revocation (his final Notice Removal Order under the BIA decision) and informed him that he would "promptly be afforded an informal interview" at which he could contest the basis for revocation and, if he was not released, that he would be afforded a new review "within approximately three months of the date of this notice," as required under 8 C.F.R. § 241.4(l). *Id.* As the Government has represented in its briefing and at the Hearing, Grigorian will be promptly afforded the informal opportunity to contest the basis for his detention and, if he is not released, will be given a formal review of his case.[3]

Further, Grigorian argues that under 8 C.F.R. § 241.4(l)(1), "ICE may revoke an Order of Supervision only if the individual violates conditions of release or if the conditions supporting release no longer exist"—and because neither of these conditions has occurred, ICE was not allowed to revoke Grigorian's supervision. Pet. ¶ 31. At the Hearing, Grigorian's counsel doubled down on this contention, arguing that Grigorian "can't be detained unless he violated his order of supervision." [ECF No. 10]. But this is not quite right. Yes, 8 C.F.R. § 241.4(l)(1) provides that an alien "who has been released under an order of supervision or other conditions of

---

[3] *See* [ECF No. 10] ("[Counsel for Respondents]: [W]hat I can assure you is what's been assured to me, that the agency will first provide notice, and then he'll have both initially an informal means of contesting it on the basis that he has a fear that his removal to that third country would subject him to torture or prosecution. If informally within the agency they don't agree that he's made such a showing, then he has the opportunity to have that determination reviewed by an immigration judge. This is what I've been told will happen in the case, and I have no reason to doubt that that's what would happen in this case.").

release who violates the conditions of release may be returned to custody." But just below this provision is 8 C.F.R. § 241.4(l)(2), which provides that:

> The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. . . . Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:
>
> (i) The purposes of release have been served;
>
> (ii) The alien violates any condition of release;
>
> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
>
> (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4(l)(2). It is therefore not the case that ICE may revoke an order of supervision *only* if an alien "violates conditions of release or if the conditions supporting release no longer exist." Pet. ¶ 31. Grigorian glosses over these alternative bases for revocation and fails to explain how or why Respondents' actions fail to comport with said regulations. Accordingly, Grigorian fails to demonstrate a substantial success of likelihood on the merits as to this claim.

### B. Petitioner's Due Process Argument Is Speculative

Next, Grigorian argues that because the Removal Order does not allow him to be deported to Iran and does not specify a third country to which he can be deported, any steps taken to execute his Removal Order violate his due process rights unless he is provided notice and the opportunity to be heard to contest his removal to a third country. *Id.* ¶ 37 ("Here, Petitioner's deferral of removal to Iran remains in effect, and the immigration judge did not designate a third country for removal. . . . ICE and DHS have failed to provide Mr. Grigorian or his counsel with any advance notice of a third country of removal and has failed to provide Mr. Grigorian and his counsel with the requisite due process to ensure he is not tortured in any third country that he is potentially

removed to."). Consequently, Grigorian asks the Court to "[o]rder the government to provide Petitioner with notice and a hearing where he can confront and oppose removal to any alternative third country that agrees to accept him, if one is identified." *Id.* at 15.

This argument is entirely speculative. As Grigorian's own briefing recognizes, the relief he seeks is to "oppose removal to any alternative third country that agrees to accept him, *if one is identified*." *Id.* (emphasis added). But, as of yet, ICE has not designated, nor even attempted to designate, a third country to which Grigorian may be removed, nor is there any suggestion that removal to any third country is imminent or even planned.

Grigorian's argument is that he has been deprived of due process by a decision that has not yet been made in a proceeding that has not yet happened. This framing is in tension with the bedrock constitutional principle that federal courts may only hear actual "Cases" and "Controversies," U.S. CONST. art. III, § 2, and, relatedly, that the party bringing a case must have standing to sue. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000) ("The Constitution's case-or-controversy limitation on federal judicial authority, Art. III, § 2, underpins . . . standing"). To have standing, the party bringing a case must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Although it is possible to seek injunctive relief to prevent future injury, the proponent of such relief must still "establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the threatened injury is certainly impending." *Friends of the Earth*, 528 U.S. at 180 (citation omitted); *see also Elend v. Basham*, 471 F.3d 1199, 1207 (11th Cir. 2006) ("The binding precedent in this circuit is clear that for an injury to suffice for prospective relief, it must be imminent." (citation omitted)).

Thus, an allegation of "*possible* future injury" will not suffice for Article III standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

At this juncture, Grigorian has not shown that he has suffered a deprivation of due process or that a deprivation of due process is "certainly impending." *Friends of the Earth*, 528 U.S. at 180. This is not to say that the facts underpinning Grigorian's Petition are immutable to change during this litigation. Of course, the Government has provided the Court with assurances that Grigorian will be afforded notice and a meaningful opportunity to oppose a third-country designation or to contest his removal. At the Hearing, Respondents' counsel assured the Court that ICE had informed him that a "third party country will be designated shortly, and [Grigorian will] be given an opportunity to contest his removal to that country." [ECF No. 10]; *see also* Resp. at 8 ("When a third country is designated for the purpose of Grigorian's removal, Grigorian will be provided notice and an opportunity to challenge the removal on the basis that he has a fear of persecution or torture in such third country. If Grigorian is found not to have a credible fear of persecution or torture, he may request that an Immigration Judge review that determination."). The Court fully expects the Government to honor these representations. And Grigorian may amend the Petition or seek renewed emergency relief from this Court if the facts on the ground change. For now, however, this argument is entirely contingent on conjectural events that have not yet come to pass. Grigorian thus fails to establish a substantial likelihood of success on the merits as to this due process argument.

### C. Petitioner Does Not State a Claim under *Zadvydas*

Petitioner relies on the Supreme Court's opinion in *Zadvydas v. Davis*, 533 U.S. 678 (2001), to allege a violation of his constitutional rights. Ordinarily, once an alien has been deemed inadmissible and ordered removed, the Government "shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). This is commonly referred to as the

"removal period." However, another provision, 8 U.S.C. § 1231(a)(6), permits detention of an alien after the removal period for certain categories of aliens. Although the post-removal-period detention statute contains no time limit on detention, in *Zadvydas*, the Supreme Court explained that the Fifth Amendment's Due Process Clause "limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States. It does not permit indefinite detention." 533 U.S. at 689.

To avoid reading the statute as violating the Fifth Amendment Due Process Clause and to create uniform standards for evaluating challenges to post-removal-period detention, the Supreme Court held that any detention of six months or less was a "presumptively reasonable period of detention," and that "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. Conversely, the Court also held that "[a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

Thus, to state a *Zadvydas* claim, the petitioner must show (1) "post-removal order detention in excess of six months" and (2) "a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

Grigorian's *Zadvydas* claim fails because he has not been detained for more than six months. Petitioner has been free to remain in the United States in the fourteen years since removal was deferred—and was not in ICE post-removal-period detention until his detention on June 23, 2025. Pet. ¶ 25; *see Zadvydas*, 552 U.S. at 696 (distinguishing "between imprisonment and supervision under release conditions that may not be violated"). Grigorian filed the Petition on

June 27, 2025, after four days in detention. *See generally* Pet. As of the date of this Order, Grigorian has been in detention for fifteen days.

Because Grigorian has been in custody for fifteen days, his detention does not violate the implicit six-month period read into the post-removal-period detention statute under *Zadvydas*. *See, e.g.*, *Akinwale*, 287 F.3d at 1050–51 (affirming dismissal of *Zadvydas* claims where § 2241 petitioner had been in custody for four months); *Gonzales v. Barr*, No. 4:20-CV-10130-JLK, 2020 WL 7294570, at *3 (S.D. Fla. Dec. 10, 2020) (finding that, under *Zadvydas*, "the 180 days in post-order custody must have expired before an individual can challenge custody under 8 U.S.C. § 1231"); *Salpagarova v. Immigr. & Naturalization Serv.*, No. 20-61739-CV, 2020 WL 13550204, at *2 (S.D. Fla. Oct. 20, 2020) ("Since the 180 days period set forth in *Zadvydas* has not yet expired, this petition is premature."); *Ferrer v. United States Att'y Gen.*, No. 19-24758-CV, 2020 WL 13548084, at *2 (S.D. Fla. Jan. 13, 2020) (finding detention for 160 days "is not sufficient to meet Zadvydas' 180-day detention requirement").

## CONCLUSION

Based on the foregoing, Grigorian fails to establish a substantial likelihood of success on the merits on any of his claims and therefore fails to demonstrate that the "extraordinary and drastic remedy" of a TRO is appropriate here. *Four Seasons*, 320 F.3d at 1210; *Schiavo*, 403 F.3d at 1226 ("[I]njunctive relief may not be granted unless the plaintiff establishes the substantial likelihood of success criterion."). Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Petitioner's Emergency Motion for Immediate Temporary Restraining Order, [ECF No. 1], is **DENIED**.

2. Respondents shall provide the Court with a status update regarding the progress of Petitioner's immigration proceedings every **seven (7) days** from the date of this Order.

3. Respondents shall **immediately** provide the Court with notice if there is any change in Petitioner's immigration status; any action or planned action regarding whether Petitioner may be deported to a third country other than Iran; any action or attempt to move Petitioner outside the jurisdiction of this Court; or any other action or planned action that would otherwise affect Petitioner's ability to remain in the United States or the Court's ability to retain jurisdiction over this action.

4. Lastly, Respondents shall show cause why the relief requested in the Petition should not be granted on or before **July 30, 2025**. In the event that Respondents fail to show good cause, the Court may grant Petitioner's requested relief, provided the record supports such relief. If Respondents do show good cause, Petitioner may file a reply within **fourteen (14) days** thereafter. No other pleadings will be allowed.

**DONE AND ORDERED** in Miami, Florida, this 8th day of July, 2025.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**